IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
ATHENS DIVISION

CHRISTOPHER GLENN,                    *

    Plaintiffs,                       *

vs.                                   *

VINCENT SCHILL, ROBERT                *      CASE NO. 3:22-cv-77 (CDL)
CAMMENGA, MORGAN LEE, MATTHEW
SMITH, STEVEN HARRIS, and FERN        *
DILLARD in their individual
capacities.                           *

    Defendant.                        *

_____

O R D E R

Plaintiff Christopher Glenn alleges that law enforcement officers violated his federal and state constitutional rights when they arrested him, used force during the arrest, and prosecuted the charges against him, which resulted in the revocation of his probation. Glenn also brings tort claims for malicious prosecution, false imprisonment, assault, and battery under Georgia law. The Defendants argue that some of Glenn's claims are time-barred and that they are entitled to immunity on the rest. As discussed below, the motion to dismiss (ECF No. 14) is granted in part and denied in part.

MOTION TO DISMISS STANDARD

"To survive a motion to dismiss" under Federal Rule of Civil Procedure 12(b)(6), "a complaint must contain sufficient

factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  The complaint must include sufficient factual allegations "to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.  In other words, the factual allegations must "raise a reasonable expectation that discovery will reveal evidence of" the plaintiff's claims.  *Id.* at 556. But "Rule 12(b)(6) does not permit dismissal of a well-pleaded complaint simply because 'it strikes a savvy judge that actual proof of those facts is improbable.'"  *Watts v. Fla. Int'l Univ.*, 495 F.3d 1289, 1295 (11th Cir. 2007) (quoting *Twombly*, 550 U.S. at 556).

FACTUAL ALLEGATIONS

Glenn alleges the following facts in support of his claims. The Court must accept these allegations as true for purposes of the pending motion.

On May 3, 2018 around 2:30 PM, in response to a report of a "suspicious person linked to a possible sexual battery against a minor," Athens-Clarke County Police Officer Morgan Lee began patrolling the area around 280 Gaines School Road in Athens, Georgia.  Am. Compl. ¶¶ 9–10, ECF No. 10.  After a brief patrol, Lee spotted Glenn walking beside a line of trees and shrubbery that bordered the road behind an elementary school.  *Id.* ¶ 10.

Lee approached Glenn and informed him that he wanted to speak to him. *Id.* Glenn asked Lee if he was being detained. Lee responded, "Yes." *Id.* Lee then ordered Glenn to sit down while he radioed for assistance. *Id.* ¶ 11. Glenn stated that he wished to remain standing and inquired about his detention. *Id.* Lee responded that he was conducting an investigation and that if Glenn moved, he would be charged with obstruction and that if he attempted to flee, Lee would use force against him. *Id.*

Soon thereafter, Athens-Clarke County Police Officers Schill, Cammenga, and Smith arrived at the scene. *Id.* ¶ 12. Almost immediately, the officers forced Glenn's hands behind his back, handcuffed him, and searched him. *Id.* The officers then informed Glenn that he was being placed in the back of a patrol car. *Id.* ¶ 13. Glenn asked again why he was being detained, and the officers responded, "for suspicion of a crime. A sexual assault crime against a minor." *Id.* The officers then pushed Glenn's head down and forced him into the back of the patrol car. *Id.*

Glenn reported symptoms of dehydration to one of the officers. *Id.* ¶ 14. That officer called an ambulance. *Id.* Once the ambulance arrived, Glenn was placed in the ambulance and examined by medical personnel. *Id.* The supervising officer interrupted the examination and ordered that Glenn be removed from the ambulance because he was in police custody and "would

be assessed by jail personnel." *Id.* At that point, Glenn began to resist, indicating that the officers did not have a right to arrest or detain him. *Id.* ¶ 15. The officers then forcibly removed Glenn from the ambulance and attempted to place him into the patrol car. *Id.* During the struggle, Glenn kicked the door of the patrol car and damaged it. *Id.* The officers used a "Ripp-Hobble restraint" to further restrain Glenn during his transport to the jail. *Id.*

Glenn was arrested and charged with Loitering and Prowling, Obstruction, and Interference with Government Property. *Id.* ¶ 16. The next day, both of Glenn's probation officers, Fern Dillard and Steven Harris, requested probation warrants for Glenn's arrest, stating that he had violated the terms of his probation by committing the new offenses. *Id.* ¶ 17. A trial court issued probation warrants for Glenn's arrest. *Id.* On May 5, 2018, Lee swore out three warrants for Loitering and Prowling, Obstruction, and Interference with Government Property, which were issued the same day by a magistrate judge. *Id.* The State later filed a petition to revoke Glenn's probation based on the Loitering, Obstruction, and Interference with Government Property charges. *Id.* ¶ 21.

On June 15, 2018, the trial court conducted an evidentiary hearing to determine whether Glenn's probation should be revoked due to the allegations that he committed the new offenses. *Id.*

4

¶ 19.   Based on the evidence presented at the hearing, the trial court concluded that Glenn had not committed the offenses of Loitering and Prowling, reasoning that the officers had not observed Glenn in a place, time, or manner that was unusual for law abiding individuals.   *Id.* ¶ 20.   Regarding the Obstruction charge, the trial court determined that Glenn had not committed that offense because the officers had no basis to arrest him in the first place.   *Id.* Despite these findings, the State did not drop these charges against Glenn.   *Id.* The trial court did find that Glenn committed the offense of Interference with Government Property when he kicked and damaged the patrol car door.   *Id.* ¶ 21.   Accordingly, the trial court granted the State's petition to revoke Glenn's probation and sentenced him to ninety days in jail.   *Id.* As a result, Glenn spent several weeks in jail and lost a job opportunity.   *Id.* ¶ 57.

Glenn appealed the trial court's determination to the Georgia Supreme Court.   *Id.* ¶ 22.   On October 5, 2020, the Georgia Supreme Court, without deciding whether Glenn's arrest was in fact unlawful, determined that Glenn had a legal right to resist an unlawful arrest.   *Accord Glenn v. State*, 849 S.E.2d 409, 424 (Ga. 2020).   The Georgia Supreme Court remanded the matter back to the trial court for a determination of "whether the force [Glenn] used in attempting to escape the unlawful detention was proportionate."   *Id.* at 411; *accord* Am. Compl.

¶ 22.  On July 26, 2021, after an evidentiary hearing, the trial court determined that the State had failed to prove Interference with Government Property in the probation revocation hearing. Am. Compl. ¶ 23.  The State subsequently dismissed all criminal charges against Glenn.  *Id.*

DISCUSSION

In his Amended Complaint, Glenn asserts claims under 42 U.S.C. § 1983 for violations of the federal constitution, as well as related state constitutional claims against Defendants Schill, Cammenga, Lee, and Smith ("the arresting officers") for excessive force and unreasonable search and seizure.  He also asserts a § 1983 claim for malicious prosecution against all the Defendants.  Relatedly, Glenn brings state law claims against the arresting officers for assault and battery, and state law claims against all the Defendants for false imprisonment and malicious prosecution.  Defendants seek to dismiss all of Glenn's claims—with the exception of his federal and state malicious prosecution claims—as time-barred under Georgia's two-year statute of limitations.  Defendants move to dismiss any timely claims as insufficiently pled or otherwise barred by immunity.  The Court addresses each argument in turn.

I.    **Time-Barred Claims**

A.    Section 1983 Claims

Defendants argue that Glenn's § 1983 claims for excessive force and unreasonable search and seizure are barred by Georgia's two-year statute of limitations for personal injury claims. They argue that the statute of limitations began to run on the date when the arresting officers arrested him and used force against him—May 3, 2018. Accordingly, by the time Glenn filed this action on July 26, 2022, the statute of limitations had expired. In response, Glenn contends the statute of limitations for all these claims began to run on July 26, 2021—the date when all the charges were dismissed against him and when the criminal proceedings terminated in his favor.

Section 1983 provides a federal cause of action but, because it does not have its own statute of limitations, state law sets the limitations period. *Wallace v. Kato*, 549 U.S. 384, 388 (2007). Claims for constitutional violations brought under § 1983 are regarded as "tort actions, subject to the statute of limitations governing personal injury actions in the state where the § 1983 action has been brought." *Crowe v. Donald*, 528 F.3d 1290, 1292 (11th Cir. 2008) (quoting *McNair v. Allen*, 515 F.3d 1168, 1173 (11th Cir. 2008)). The parties agree that Georgia law provides a two-year statute of limitations for personal injury torts. O.C.G.A. § 9-3-33.

Although the length of the statute of limitations is provided by state law, federal law dictates the date of accrual. *Kato*, 549 U.S. at 388-89.  Federal law provides that a claim accrues "when the plaintiff has 'a complete and present cause of action.'" *Reed v. Goertz*, 143 S. Ct. 955, 961 (2023) (quoting *Bay Area Laundry & Dry Cleaning Pension Tr. Fund v. Ferbar Corp. of Cal.*, 522 U.S. 192, 201 (1997)).  That is generally the date when the plaintiff knew or should have known of his injury. *Foudy v. Indian River Cnty. Sheriff's Off.*, 845 F.3d 1117, 1123 (11th Cir. 2017) (explaining that the "should have known" element often means that a cause of action accrues on the date of the injury's occurrence).  To determine the date of accrual, courts focus on the specific constitutional right alleged to have been infringed. *Reed*, 143 S. Ct. at 961.

Here, Glenn knew or should have known of the injuries giving rise to his Fourth Amendment excessive force and unreasonable search and seizure claims on May 3, 2018—the date on which the arresting officers arrested him and allegedly used excessive force against him.  Accordingly, Glenn had until May 3, 2020 to bring his claims for excessive force and unreasonable search and seizure against the arresting officers.  Because he did not file his original complaint until July 26, 2022, his § 1983 claims for excessive force and unreasonable search and

seizure are time-barred.[1]  Therefore, the Court grants the motion to dismiss Glenn's § 1983 claims for excessive force and unreasonable search and seizure.

B.   State Law Claims

Defendants also contend that Glenn's state law assault, battery, and false imprisonment claims are time-barred.  These claims are likewise subject to Georgia's two-year statute of limitations for personal injury torts, but the accrual date for the assault and battery claims differs from the false imprisonment claim.  Accordingly, the Court first considers Glenn's assault and battery claims, then his false imprisonment claim.

1.   *Assault and Battery*

The Court finds that Glenn's assault and battery claims against the arresting officers are time-barred.  Under Georgia law, the statute of limitations for such claims begins to run when "the tort is complete."  *Everhart v. Rich's, Inc.*, 194 S.E.2d 425, 428 (Ga. 1972).  For actions based on personal injury, a tort is "complete" when "an injury results from [a]

---

[1] Glenn's excessive force and unreasonable search and seizure claims arising under the Georgia Constitution are also time-barred under Georgia's two-year statute of limitations for the same reasons as his corresponding § 1983 claims.  *See Everhart v. Rich's, Inc.*, 194 S.E.2d 425, 428 (Ga. 1972) ("On a tort claim for personal injury the statute of limitation generally begins to run at the time damage caused by a tortious act occurs, at which time the tort is complete."); *see also Gardei v. Conway*, 868 S.E.2d 775, 780 (Ga. 2022) (stating that Georgia's two-year limitations period applies to declaratory judgment claims arising under the Georgia Constitution).

wrongful act or omission." *Harvey v. Merchan*, 860 S.E.2d 561, 568 (Ga. 2021); *see also M.H.D. v. Westminster Schs.*, 172 F.3d 797, 804 (11th Cir. 1999) (stating that under Georgia law, "the statute of limitations begins to run when the plaintiff's cause of action becomes legally cognizable"). Here, Glenn alleges that he sustained his injuries "[d]uring the course of" his unlawful arrest, which occurred on May 3, 2018. Am. Compl. ¶ 27. Accordingly, Glenn had until May 3, 2020 to bring assault and battery claims against Lee, Schill, Cammenga, and Smith based on the arrest. Because Glenn did not file this action until July 26, 2022, his assault and battery claims are time-barred, and the motion to dismiss Glenn's state law assault and battery claims is granted.

      *2.   False Imprisonment*

Glenn's state law false imprisonment claim is likewise time-barred. False imprisonment claims accrue when the plaintiff is released from imprisonment. *Campbell v. Hyatt Regency*, 388 S.E.2d 341, 342 (Ga. Ct. App. 1989). While it is unclear from the Amended Complaint when precisely Glenn was released from jail, the latest day that he could have been in jail based on the record is September 13, 2018. *Compare* Am. Compl. ¶ 57 (stating that Glenn was in jail for "several weeks"), *with* Compl. Ex. 2, Ante Litem Notice, ECF No. 1-2 at 5 (stating that Glenn was in jail from May 3, 2018 to September

13, 2018), *and Glenn*, 849 S.E.2d at 413 n.10 (stating that the trial court suspended Glenn's sentence conditioned on Glenn's acceptance into the treatment and accountability court program). Accordingly, Glenn had until September 13, 2020—at the latest—to bring his false imprisonment claim. Because Glenn did not file this action until July 26, 2022, his false imprisonment claim against all the Defendants is time-barred. Therefore, the Court grants Defendants' motion to dismiss Glenn's false imprisonment claim.

## II. Malicious Prosecution

Glenn's only remaining claims are his federal and state claims for malicious prosecution against all the Defendants. Defendants do not argue that these claims are untimely. A Fourth Amendment claim for malicious prosecution is "'shorthand' for a claim of deprivation of liberty pursuant to legal process." *Laskar v. Hurd*, 972 F.3d 1278, 1292 (11th Cir. 2020). To maintain a § 1983 malicious prosecution claim, Glenn must prove "(1) that the defendant violated his Fourth Amendment right to be free from seizures pursuant to legal process and (2) that the criminal proceedings against him terminated in his favor." *Luke v. Gulley*, 975 F.3d 1140, 1144 (11th Cir. 2020) (simplifying the standard for malicious prosecution into two elements). To establish a malicious prosecution claim under Georgia law, Glenn must prove that a prosecution was instituted

maliciously, without probable cause, and that the prosecution terminated in his favor. *See* O.C.G.A. § 51-7-40 (defining malicious prosecution cause of action); *Condon v. Vickery*, 606 S.E.2d 336, 339 (Ga. Ct. App. 2004) (listing the elements of malicious prosecution under Georgia law). The Court must consider each official's conduct separately.

Defendants contend that Glenn failed to state a claim for malicious prosecution against Defendants Schill, Cammenga, and Smith. Glenn did not allege that Schill, Cammenga, or Smith made any misstatements or omissions necessary to support any of the warrants. He also did not allege that Schill, Cammenga, or Smith participated in instituting or continuing the prosecution, such as the swearing out of warrants against him or otherwise pursuing the charges. Rather, Glenn's allegations against these Defendants only relate to their arrest of him. Accordingly, the Court finds that Glenn's allegations against Schill, Cammenga, and Smith are insufficient to support a claim for malicious prosecution under both federal and state law. Therefore, the motion to dismiss Glenn's malicious prosecution claims is granted with respect to these Defendants.

Defendants Lee, Dillard, and Harris do not dispute that Glenn alleges that they participated in instituting or continuing Glenn's prosecution. They do contend, however, that they are entitled to qualified immunity on Glenn's federal

malicious prosecution claim and to official immunity on his state law malicious prosecution claim.

A.   Qualified Immunity

"Qualified immunity shields public officials from liability for civil damages when their conduct does not violate a constitutional right that was clearly established at the time of the challenged action." *Echols v. Lawton*, 913 F.3d 1313, 1319 (11th Cir. 2019) (quoting *Bailey v. Wheeler*, 843 F.3d 473, 480 (11th Cir. 2016)).  To receive qualified immunity, the officer "bears the initial burden to prove that he acted within his discretionary authority." *Dukes v. Deaton*, 852 F.3d 1035, 1041 (11th Cir. 2017).  Officers who act within their discretionary authority are "entitled to qualified immunity under § 1983 unless (1) they violated a federal statutory or constitutional right, and (2) the unlawfulness of their conduct was 'clearly established at the time.'" *District of Columbia v. Wesby*, 138 S. Ct. 577, 589 (2018) (quoting *Reichle v. Howards*, 566 U.S. 658, 664 (2012)).  Glenn does not dispute that the officers acted within their discretionary authority, so he bears the burden at this stage of the proceedings to establish that he alleged facts that demonstrate that the officers are not entitled to qualified immunity.  In evaluating whether Glenn has carried this burden, the Court accepts his factual allegations

as true and determines whether, under that version of the facts, Defendants violated clearly established law.

Glenn alleges that Lee, Dillard, and Harris violated his clearly established Fourth Amendment right to be free from an unreasonable seizure as a result of a malicious prosecution. There is no dispute that the criminal proceedings terminated in Glenn's favor. To establish that Lee, Dillard, and Harris violated his Fourth Amendment right to be free from seizures pursuant to legal process, Glenn must show "that the legal process justifying his seizure was constitutionally infirm" and that his "seizure would not otherwise be justified without legal process." *Williams v. Aguirre*, 965 F.3d 1147, 1165 (11th Cir. 2020). Glenn can show constitutional infirmity by establishing (1) that the officials who obtained warrants against him should have known that there was no probable cause for at least one of the crimes for which he was charged, or (2) that an official intentionally or recklessly made misstatements or omissions necessary to support the warrant. *Id.; id.* at 1167 (finding a jury question as to "whether the warrant was invalid as to at least one charge in the arrest warrant").

Lee, Dillard, and Harris argue that because the arresting officers had at least arguable probable cause to arrest Glenn, they must be entitled to qualified immunity on Glenn's malicious prosecution claim. But whether the arresting officers had

14

arguable probable cause to *arrest* Glenn is not dispositive of a malicious prosecution claim. *Id.* at 1158–59. Rather, the appropriate inquiry is whether the judicial officer who issued the warrant was supplied with sufficient, truthful information to "support an independent judgment that probable cause exist[ed] for the warrant." *Id.* at 1162 (quoting *Whiteley v. Warden*, 401 U.S. 560, 564 (1971)). The determination of probable cause "turns on 'what the affidavit charging the plaintiff stated.'" *Luke v. Gulley* ("*Luke II*"), 50 F.4th 90, 95 (11th Cir. 2022) (quoting *Williams*, 965 F.3d at 1163). The "warrant . . . must set forth particular facts and circumstances underlying the existence of probable cause." *Id.* (quoting *Franks v. Delaware*, 438 U.S. 154, 165 (1978)). Accordingly, the Court must consider whether Lee, Dillard, and Harris—the officers who obtained warrants against Glenn—supplied the judicial officers with sufficient, truthful information to establish probable cause.

Beginning with Dillard, the warrant Dillard presented to the judge states, "The defendant is in violation of CONDITION #1, in that, on or about 5-03-2018, in Athens-Clarke County, GA, the defendant did commit the new offenses of Loitering/Prowling, Obstruction of a Law Enforcement Officer, and Interference with Government Property." Am. Compl. Ex. 1, Dillard Warrant, ECF No. 10-1. Such language is plainly insufficient to establish

probable cause.   *See Luke II*, 50 F.4th at 96 (finding an affidavit that "consist[ed] of nothing more than [a] conclusion" that the plaintiff had committed the offense, "could not support the independent judgment of [the] disinterested magistrate" judge (quoting *Whiteley*, 401 U.S. at 565 n.8)); *Kelly v. Curtis*, 21 F.3d 1544, 1555 (11th Cir. 1994) (holding that an officer's warrant was insufficient to establish probable cause because it did not articulate "the basis for [the officer's] belief" that the plaintiff violated the law or affirmatively allege that she had personal knowledge of the circumstances of the plaintiff's alleged crime); *Garmon v. Lumpkin County*, 878 F.2d 1406, 1408 (11th Cir. 1989) (holding that the officer violated the Constitution by seeking a warrant that stated only "to the best of (his or her) knowledge and belief . . . [the plaintiff] did . . . commit the offense of false report of a crime").   The language in Dillard's warrant mimics the conclusory language that was insufficient in *Luke II*, *Kelly*, and *Garmon*. Accordingly, the Court finds that Glenn adequately alleged that Dillard should have known the warrant was not supported by probable cause and that the warrant was thus constitutionally infirm.

Turning to Harris, Glenn alleges that Harris also swore out a probation warrant without probable cause alleging that Glenn committed the offenses of Loitering and Prowling, Obstruction,

and Interference with Government Property. Am. Compl. ¶¶ 17, 56. Glenn did not attach a copy of that warrant to the complaint, but he does allege that the probation warrants were "without probable cause." *Id.* ¶ 56. The Court finds that the allegations against Harris "raise a reasonable expectation that [limited] discovery will reveal evidence" of whether Harris should have known whether his warrant lacked probable cause. *Twombly*, 550 U.S. at 545. Accordingly, the Court denies the motion to dismiss Glenn's § 1983 malicious prosecution claim against Harris.

Lee's warrants are slightly more detailed than Dillard's, but Glenn need only show that one of the three charges was unsupported by probable cause to adequately allege a constitutional violation.[2] *Williams*, 965 F.3d at 1167 (holding that because a jury question existed "about whether the warrant was invalid as to at least one charge in the arrest warrant," the plaintiff met his burden of establishing that he was seized in violation of the Fourth Amendment). Lee's arrest warrant against Glenn for Loitering and Prowling states that Glenn "did, between 05/03/2018 2:37 PM and 05/03/2018 2:45 PM" commit the offense of "Loitering and Prowling" at "280 Gaines School Road" when he

---

[2] Probable cause "for other offenses may be relevant to damages." *Williams*, 965 F.3d at 1161.

> [W]as in a place at a time and manner not usual for
> law-abiding individuals under circumstances that
> warranted a justifiable and reasonable alarm for the
> safety of persons and property in the vicinity to wit:
> running through and along the edge of Oglethorpe
> Elementary after reportedly touching an unknown child
> in a sexual manner.

Am. Compl. Ex. 2, Arrest Warrant for Loitering and Prowling
Sworn Out by Officer Lee 1, ECF No. 10-2.  This warrant is
insufficient.  It merely repeats the statutory language used in
the Loitering and Prowling statute and concludes that Glenn
committed the offense.  *See* O.C.G.A. § 16-11-36(a) (stating that
a person is loitering or prowling when "he is in a place at a
time or in a manner not usual for law-abiding individuals under
circumstances that warrant a justifiable and reasonable alarm or
immediate concern for the safety of persons or property in the
vicinity").  Although the warrant provides some factual
specifics, such as location and time, it provides no basis for
Lee's belief that Glenn touched an "unknown child in a sexual
manner."  While the warrant claims that Glenn was "running" near
the elementary school, it provides no factual specifics as to
why Glenn running would have made it more likely that he had
just committed a crime.  Accordingly, the Court concludes that
Glenn adequately alleged that Lee should have known that the
arrest warrant for Loitering and Prowling lacked probable cause
and thus was constitutionally infirm.

18

Having found that Glenn plausibly alleged that at least one of the charges was constitutionally inadequate, the next question is whether Glenn's seizure would nevertheless be justified without legal process. Glenn alleged that he was in jail for "several weeks" before he was eventually given an evidentiary hearing. Am. Compl. ¶ 57. A seizure of that length must be supported by a lawful warrant—even if the arresting officers had arguable probable cause to arrest Glenn. *See County of Riverside v. McLaughlin*, 500 U.S. 44, 57 (1991) (treating a seizure lasting beyond 48 hours without a probable cause determination as presumptively unconstitutional). Accordingly, the Court concludes that Glenn adequately alleged that Dillard, Harris, and Lee violated his Fourth Amendment right to be free from malicious prosecution by obtaining plainly insufficient warrants.

The Court further finds that the unlawfulness of Dillard's, Harris's, and Lee's conduct was clearly established at the time of the violation. As the Eleventh Circuit recently explained, it has long been established that officers who seek warrants based on conclusory affidavits that are clearly insufficient to establish probable cause are not entitled to qualified immunity. *Luke II*, 50 F.4th at 97 (citing *Kelly*, 21 F.3d at 1555, which quoted *Garmon*, 878 F.2d at 1408); *see also Malley v. Briggs*, 475 U.S. 335, 344-45 (1986) (holding that an officer who seeks a

warrant that does not show reasonably objective probable cause is not entitled to qualified immunity—even if a judicial officer erroneously issued the warrant).  Considering the similarities between the warrants here and the warrants in *Kelly* and *Garmon*, no "reasonably competent officer" could have concluded that the warrants were supported by probable cause.  Those decisions were issued well before the officers presented the warrants at issue here.  Accordingly, the Court concludes that the unlawfulness of Dillard's, Harris's, and Lee's conduct was clearly established when they swore out the warrant affidavits in May 2018.

   B.   Official Immunity

As mentioned above, Glenn's only remaining state law claim is his state law malicious prosecution claim against Lee, Dillard, and Harris, who contend that they are entitled to official immunity under Georgia law.  Official immunity is intended to "preserve the public employee's independence of action without fear of lawsuits and to prevent a review of his or her judgment in hindsight." *Cameron v. Lang*, 549 S.E.2d 341, 344 (Ga. 2001).  It applies to an officer's discretionary actions taken within the scope of his official authority.  *Id.* Unlike qualified immunity, which is based on an "objective standard of reasonableness" where "evidence of improper motive" is irrelevant, official immunity is based on the subjective standard of "actual malice." *Abercrombie v. Beam*, 728 F. App'x

918, 928 (11th Cir. 2018) (per curiam).  Accordingly, officials who are denied qualified immunity under federal law may nonetheless be granted official immunity for claims arising under Georgia law.  *See, e.g.*, *id.* (affirming denial of qualified immunity while affirming grant of official immunity to an officer whose conduct was "objectively unreasonable" but did not demonstrate a "deliberate intention to do wrong").  As discussed below, the Court concludes that Lee, Dillard, and Harris are all entitled to official immunity.

    *1.  Defendant Lee*

Everyone agrees that Lee was performing a discretionary act within the scope of his official authority when he arrested Glenn and swore out a warrant against him.  Accordingly, Lee can only be liable for state law malicious prosecution if he acted with "actual malice" or "actual intent to cause injury," which are required to overcome official immunity.  *Kidd v. Coates*, 518 S.E.2d 124, 125 (Ga. 1999) (quoting Ga. Const. art. 1, § 2, ¶ IX(d)).  The Georgia Supreme Court has explained that actual malice means "a deliberate intention to do wrong" and not a "reckless disregard" for the rights or safety of others.  *Merrow v. Hawkins*, 467 S.E.2d 336, 338 (Ga. 1996).  Similarly, the phrase "actual intent to cause injury" means "an actual intent to cause harm to the plaintiff, not merely an intent to do the

act purportedly resulting in the claimed injury." *Kidd*, 518 S.E.2d at 125 (internal quotation marks omitted).

Glenn contends that Lee acted with actual malice when he detained him for sexual battery against a minor absent any trustworthy information that Glenn had committed the crime, ignored exculpatory information that Glenn was merely walking home, and falsely swore out an arrest warrant stating that Glenn was "running" near the school when Lee detained him. The Court finds that these allegations are insufficient to support a plausible claim that Lee acted with actual malice. Put simply, there is nothing in the Amended Complaint that suggests Lee acted with the deliberate intention to harm Glenn. Although Lee's investigation may have been deficient and his decision to arrest Glenn misguided, Glenn did not allege that Lee acted with any personal animus towards Glenn or with deliberate intent to commit a wrongful act, such as arresting Glenn for a crime he knew that Glenn did not commit. *See Bateast v. Dekalb County*, 572 S.E.2d 756, 758 (Ga. Ct. App. 2002) (finding that officers acted with actual malice when they arrested the plaintiff for a crime despite having clear proof that the plaintiff had not committed the crime). Even if Lee ignored facts that, with investigation, could have exculpated Glenn, the Amended Complaint fails to allege facts that suggest Lee did so with anything more than a "reckless disregard for the rights of

others"—which is insufficient to establish actual malice. *Merrow*, 467 S.E.2d at 338.

The same is true of Lee's alleged fabrication that Glenn was "running" instead of "walking." Although Glenn alleged that Lee "deliberately and falsely stated that [Glenn] had been running in the woods behind the school," Glenn did not allege that Lee intentionally misrepresented the circumstances of Glenn's arrest in a deliberate effort to act wrongfully or harm Glenn. Am. Compl. ¶ 46. Accordingly, because Glenn failed to plausibly allege actual malice, Lee is entitled to official immunity under Georgia law. Glenn's state law malicious prosecution claim against Lee is therefore dismissed.

### 2. *Defendants Dillard and Harris*

Glenn does not dispute that Dillard and Harris were performing discretionary acts when they swore out probation warrants against him, so Dillard and Harris are entitled to official immunity unless Glenn adequately alleged that they acted with actual malice when they swore out probation warrants without probable cause. Instead of alleging specific facts suggesting actual malice or intent to injure, Glenn claims that malice may be inferred from lack of probable cause. While Glenn is correct that lack of probable cause can support malice as a required element of a malicious prosecution claim, the mere allegation that Dillard and Harris lacked probable cause is

insufficient to support the *actual* malice required to defeat Georgia official immunity. *Marshall v. Browning*, 712 S.E.2d 71, 73 (Ga. Ct. App. 2011). Even taking the allegation that Dillard and Harris completely lacked probable cause as true, Glenn must allege facts that support an inference that they acted with an intent to harm Glenn. Because Glenn failed to plausibly make such allegations, Dillard and Harris are entitled to official immunity under Georgia law. Thus, Glenn's state law malicious prosecution claim against Dillard and Harris is dismissed.

CONCLUSION

For the foregoing reasons, the motion to dismiss (ECF No. 14) is granted as to all of Glenn's claims against Defendants Lee, Dillard, and Harris except for Glenn's malicious prosecution claim under § 1983. The motion to dismiss is granted in its entirety with respect to Defendants Schill, Cammenga, and Smith. Because the Court declines to dismiss Glenn's malicious prosecution claim under § 1983, Glenn's claim for punitive damages connected to that claim survives dismissal.

IT IS SO ORDERED, this 6th day of June, 2023.

S/Clay D. Land
CLAY D. LAND
U.S. DISTRICT COURT JUDGE
MIDDLE DISTRICT OF GEORGIA